**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

ALICIA T.,[1]

        Plaintiff,

        v.                               **DECISION AND ORDER**
                                                6:21-cv-06529-RJA

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

        Alicia T. (Plaintiff) brings this action seeking review of the Commissioner of Social Security's final decision that denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (SSA). The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 7, 10), and Plaintiff filed a reply (Dkt. No. 12).

        The Court assumes the parties' familiarity with the administrative record, the parties' arguments, and the standard of review, to which the Court refers only as necessary to explain its decision. *See Schaal v. Apfel*, 134 F.3d 496, 500-501 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges (ALJs) are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same). For the

---

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff using only her first name and last initial, in accordance with this Court's Standing Order issued November 18, 2020.

reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's cross-motion is DENIED, and this matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## **PROCEDURAL HISTORY**

Plaintiff applied for disability insurance benefits (DIB) on October 8, 2019, at the age of 24, alleging disability beginning on November 20, 2018. With respect to Plaintiff's DIB application, Plaintiff's date last insured was March 31, 2017. See T. 78, 122. [2]

Plaintiff's application was initially denied in April 2020 and again upon reconsideration in July 2020.  T. 112-17, 128-33. After requesting a hearing, T. 135-36, Plaintiff appeared with her attorney and testified at a telephone hearing on December 2, 2020, with ALJ Kevin Kenneally and with a Vocational Expert (VE) who also testified, *see* T. 53-75. Following the hearing, the ALJ issued an unfavorable decision dated December 15, 2020, finding Plaintiff was not disabled within the meaning of the SSA. T. 27-29. In that decision, the ALJ found that Plaintiff had the following severe impairments: (1) auditory processing disorder; (2) generalized anxiety disorder (GAD); (3) major depressive disorder (MDD); (4) attention deficit/hyperactivity disorder (ADHD); (5) posttraumatic stress disorder (PTSD); (6) bipolar disorder; (7) borderline personality disorder; (8) migraines; (9) lumbar spine disorder; (10) mild high frequency sensorineural hearing loss bilaterally; (11) tinnitus; (12) tremors of the bilateral hands; (13) benign paroxysmal positional vertigo (BPPC); (14) plantar fasciitis and tinea pedis; and (15) obesity. T. 32. After concluding that Plaintiff's impairments did not meet or

---

[2] "T. __" refers to pages of the administrative transcript at Dkt. No. 5, specifically the pagination located in the bottom, right-hand corner of the transcript, not the pagination generated by CM/ECF in the header.

medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1, he determined Plaintiff's Residual Functional Capacity ("RFC") to be at the sedentary level[3], with the following additional limitations:

> The Plaintiff can occasionally push, pull, and operate controls with the bilateral upper and lower extremities and she can frequently handle, finger, and feel bilaterally. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, and she can never climb ropes, ladders, or scaffolds. She can never be exposed to unprotected heights, moving mechanical parts, or operate a motor vehicle. She can have no exposure to vibrations as well as loud and very loud noise levels. She is limited to performing simple routine tasks and making simple work related decisions, and she can frequently interact with the public, coworkers, and supervisors.

T. 37. Plaintiff thereafter requested review by the Appeals Council, but her request was denied in June 2021, thereby making the ALJ's decision the Commissioner's final decision. T. 1-3. This action seeks review of the Commissioner's final decision. Dkt. No. 1.

## DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *see* 42 U.S.C. § 405(g). "'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence

---

[3] Sedentary work is defined by agency regulations as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The parties contest the ALJ's RFC determination. An individual's RFC is "what an individual can still do despite his or her limitations[.]" *Melville v. Apfel*, 198 F.3d 45, 53 (2d Cir. 1999), quoting SSR 96-8p, 1996 WL 374184, *2,1996 SSR LEXIS 5 at *5 (S.S.A. July 2, 1996). In other words, his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.] [T]he RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* "It is well-settled that when making an RFC assessment, an ALJ must consider all the relevant evidence, including medical opinions and facts, claimant's physical and mental abilities, non-severe impairments, and subjective evidence of symptoms that could interfere with work activities on a regular and continuing basis." *Williams v. Comm'r of Soc. Sec.*, 18-CV-1027, 2020 WL 4904947, 2020 U.S. Dist. LEXIS 151236, *7 (W.D.N.Y. Aug. 20, 2020), citing 20 C.F.R. §§ 404.1545(a)-(e) and *Ferraris v. Heckler*, 728 F.2d 582, 585 (2d Cir. 1984).

Plaintiff argues that the ALJ failed to evaluate the medical opinions pursuant to the appropriate legal standards, and that the ALJ's RFC finding is unsupported by substantial evidence.[4] The Commissioner argues the RFC determination is supported by substantial evidence and free of legal error.

---

[4] Before this Court, Plaintiff challenges only the ALJ's consideration of her mental impairments.

I. **Evaluation of Opinion Evidence**

The ALJ evaluated seven opinions in making his RFC determination, finding four of them to be generally persuasive. The opinions of Dr. Adam Brownfeld, Psychiatric Consultative Examiner, and State Agency Evaluators, Dr. J. May and Dr. K. Lieber-Diaz were all found to be persuasive. T. 41-43. He found the opinion of Kathleen Wolfsong, LCSW, Plaintiff's therapist, largely persuasive. T. 42. The ALJ found the opinions of Dr. Anna Jack, Plaintiff's primary care physician; Dr. Tulio Ortega, Plaintiff's treating psychiatrist; and Dr. Christine Ransom, Psychiatric Consultative Examiner, were not persuasive. T. 42-43.

**A. Treatment Notes**

Plaintiff first argues that the ALJ improperly rejected the opinion of Dr. Anna Jack. Although Dr. Jack prescribed psychiatric medication to Plaintiff in the past, the ALJ emphasized that Dr. Jack is a primary care provider and not a mental health specialist. T. 42; *see* 20 C.F.R. §404.1520c(c)(4) (a medical provider's specialty is a relevant consideration in evaluating their opinion).

Further, Plaintiff challenges the ALJ's finding that Dr. Jack's treatment notes are inconsistent with her opinion regarding Plaintiff's symptoms, mental status examinations, and absenteeism. The ALJ explained that Dr. Jack's opinion was in opposition with her notes stating Plaintiff had abnormal affect with no positive psychiatric findings, and accordingly found her opinion not persuasive. T. 42, citing T. 390, 673. Plaintiff argues that even if the ALJ identified isolated normal findings, the Second Circuit has held that mental status examinations, "analyze the patient's mental state only at the time of the examination and do not consider symptoms the patient may

5

experience outside of that brief period of time." *Loucks v. Kijakazi*, 2022 WL 2189293, at *2, 2022 U.S. Dist. LEXIS 16829, *4 (2d Cir. June 17, 2022) (citing *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) ("a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health")).

Plaintiff also points out that the ALJ cited throughout the decision "variable symptoms" and notes medication noncompliance by Plaintiff. Pl.'s Mem. 22, T. 43. Plaintiff was diagnosed with, and received treatment for, bipolar I disorder[5] by multiple providers. T. 7, 251, 253, 669. Emotional lability is a hallmark of bipolar I disorder. Am. Psychiatric Assoc., supra, at 127. Thus, patients with the disorder "may shift very rapidly to anger or depression." *Id*. Moreover, the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) notes that treatment noncompliance is common among individuals diagnosed with bipolar I disorder. Am. Psychiatric Assoc. supra, at 129 (explaining under "Associated Features Supporting Diagnosis" of bipolar I disorder that "[d]uring a manic episode, individuals often do not perceive that they are ill ... and vehemently resist efforts to be treated"). Plaintiff contends the ALJ chose to see the notes demonstrating improvement and ignored those showing negative symptoms.

The Commissioner correctly asserts that while there was conflicting evidence in the record among the medical opinions, it is the role of the ALJ to reconcile those conflicts concerning Plaintiff's functioning. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (explaining that "genuine conflicts in the medical evidence are for the

---

[5] Bipolar I disorder is characterized by alternating periods of mania and depression. Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 123–26 (5th ed. 2013).

6

Commissioner to resolve"). The ALJ appropriately outlined his reasoning for each persuasiveness finding.

### B. Attendance Limitations

Plaintiff also argues the ALJ erred in his assessment of her attendance limitations. Dr. Brownfeld opined that Plaintiff had mild limitations with regular attendance. T. 597-600. Dr. Lieber-Diaz opined that Plaintiff was moderately limited regarding her ability to maintain regular attendance. T. 108. Kathleen Wolfsong, LCSW, opined that Plaintiff was seriously limited, but was not precluded in her ability to maintain regular attendance and anticipated Plaintiff would be absent from work more than four days per month. T. 859-61. Dr. Jack also opined Plaintiff was unable to meet competitive standards regarding attendance and would be absent more than four days per month. T. 776-78.

The ALJ's decision explained that he found both Kathleen Wolfsong and Dr. Jack's opinions regarding absenteeism to be inconsistent with the record, as there "is little evidence of cancellations or no-shows to any of the claimant's providers." T. 42. Plaintiff contends that she was discharged from Dr. Jeffrey Albert's psychiatric practice due to missing too many appointments. T. 504. Kathleen Wolfsong also has progress notes that indicate Plaintiff did not attend appointments on March 25, 2019, and January 21, 2019. T. 626, 628. The other notes Plaintiff refers to pre-date the alleged disability onset date.

The Commissioner highlights that the ALJ acknowledged consultative examiner Dr. Brownfeld's opinion concerning Plaintiff's attendance, which concluded Plaintiff was mildly limited. T. 41. The ALJ considered the opinions of Dr. Jack and Kathleen

Wolfsong regarding future absenteeism from work and found those opinions of marked limitations inconsistent with the record. Ultimately, the ALJ evaluated all opinions regarding Plaintiff's history of missed appointments and potential future absenteeism limitations and explained why he found each one to be persuasive or not persuasive. The ALJ did not err in reconciling conflicts between the medical opinions and concluding that Plaintiff did not have marked limitations in absenteeism. *See Richardson v. Perales,* 402 U.S. 389, 399 (1971) ("The trier of fact has the duty to resolve. . . conflicting medical evidence).

II.     **Mental RFC Finding**

While the Court disagrees with Plaintiff's argument for remand based on the ALJ's evaluation of opinion evidence, the Court finds that remand is required as the RFC determination is not supported by substantial evidence. Specifically, the ALJ erred in determining Plaintiff "can frequently interact with the public, coworkers, and supervisors." T. 37. This limitation is not supported by the evidence in the record or by the opinions the ALJ found persuasive.

The ALJ found the opinions of Dr. Brownfeld, Kathleen Wolfsong, LCSW, Dr. Lieber-Diaz, and Dr. May persuasive. All four of these providers opined that Plaintiff had moderate limitations interacting with others. T. 92, 108-09, 597-600, 861. Dr. May additionally opined in the Psychiatric Review Technique (PRT) that Plaintiff "retains capacity for tasks in low contact environment" and Dr. Lieber-Diaz opined in the PRT that Plaintiff would be "capable of unskilled work in a setting that has limited contact with others." T. 90, 106. Additionally, at the hearing, Plaintiff testified that she has problems

getting along with coworkers, supervisors, and bosses, specifying that she gets "agitated by having to work with them. . . and [doesn't] get along very well." T. 63.

None of the opinions expressed the limitations in social interactions using the terms "frequently" or "occasionally." "Frequent" is defined as occurring from one-third to two-thirds of the time. S.S.R. 83-10. "Occasionally" is defined as occurring from very little up to one-third of the time. S.S.R. 96-9p. There is, however, an abundance of case law that relates these terms to a Plaintiff's social functioning. "Social functioning" refers to the claimant's "capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals." *McGregor v. Astrue*, 993 F. Supp. 2d 130, 138 (N.D.N.Y. 2012), quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(2)). It includes "the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* The ALJ acknowledged Plaintiff's difficulty in interacting with others, finding her to have a moderate limitation in the mental RFC. T. 34-35.

A moderate limitation in social interaction or ability to interact appropriately with the public, coworkers, or supervisors can be accommodated by a restriction of no more than occasional interaction. *See Gomez v. Comm'r of Soc. Sec.*, 18-CV-96, 2020 WL 1322565, at *3, 2020 U.S. Dist. LEXIS 49261, *7 (W.D.N.Y. March 20, 2020) (ALJ suitably translated moderate limitation in ability to interact appropriately with supervisors by limiting plaintiff to occasional interaction with supervisors)*; see also Reilly v. Colvin*, 13-CV-785, 2015 WL 6674955, at *3, 2015 U.S. Dist. LEXIS 148073, *9 (W.D.N.Y. Nov. 2, 2015) (restriction to occasional contact sufficient to account for moderate limitations); *Wasiewicz v. Colvin*, No. 13-CV-1026S, 2014 WL 5465451, at *5, 2014 U.S. Dist.

9

LEXIS 152920, *12 (W.D.N.Y. Oct. 28, 2014) (where ALJ incorporated moderate limitations into his RFC by expressly restricting to no more than occasional contact with the public, coworkers, or supervisors); *but cf. Wightman v. Comm'r of Soc. Sec.*, No. 18-CV-6295L, 2019 WL 2610712 (W.D.N.Y. June 26, 2019) (an RFC limiting Plaintiff to frequent social interaction is not inconsistent with moderate limitations). Occasional contact is also defined as limited contact. *See Mendoza v. Kijakazi*, No. 1:19-CV-1371-HBK, 2022 WL 715096, 2022 U.S. Dist. LEXIS 43197 (E.D. Cal. Mar. 10, 2022) (equating occasional contact and limited contact); *Jones v. Colvin*, No. 4:14-CV-00200-RN, 2015 WL 4773542, 2015 U.S. Dist. LEXIS 106622 (E.D.N.C. Aug. 13, 2015).

The Court finds moderate, limited, or low contact limitations in social functioning – as reflected in the medical opinions that the ALJ found persuasive – is compatible with an RFC's limitation of *occasional* interaction with the public, coworkers, or supervisors, not frequent interaction.

"[I]t is the ALJ's responsibility...to build an accurate and logical bridge from the evidence to [his or her] conclusion to enable a meaningful review[.]" *Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 100 (W.D.N.Y. 2020) The ALJ simultaneously adopted the conclusions of multiple physicians that Plaintiff was moderately impaired regarding social interaction while crafting an RFC allowing for frequent interaction. The ALJ erred in his RFC determination when limiting Plaintiff to frequent interaction, when all the opinion evidence that he found persuasive indicated Plaintiff was capable of no more than occasional interaction. The ALJ did not provide explanation for the discrepancy and therefore the court cannot conduct a meaningful review. *Id*.

Furthermore, when Plaintiff's representative posed a hypothetical with all the same limitations in the ALJ's hypothetical number one except for the ability to frequently interact, the VE said if Plaintiff was occasionally unable to properly interact, that would preclude employment. T. 73-74. Therefore, the distinction is not without a difference in this case - the difference in social interaction would clearly impact Plaintiff's ability to qualify for jobs in the national economy. *Compare with Athena W. v. Comm'r of Soc. Sec.*, No. 20-CV-01831-MJR, 2023 WL 2262790, at *5, 2023 LEXIS 33419, at *18 (W.D.N.Y. Feb. 27, 2023) (VE testified a change in Plaintiff's social interaction would have no effect on ability to find a job).

The ALJ's errors left the RFC unsupported by substantial evidence and warrant remand. *See Smith v. Saul*, No. 17-CV-6641-CJS, 2019 WL 2521188, at *2, 2019 U.S. Dist. LEXIS 102689, *4 (W.D.N.Y. June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence.").

## **CONCLUSION**

It is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, Plaintiff's motion (Dkt. No. 7) for judgment on the pleadings is GRANTED to the extent the Commissioner's final decision is reversed, the Commissioner's motion (Dkt. No. 10) for similar relief is DENIED, and the Commissioner's final decision is VACATED. The case REMANDED for further administrative proceedings consistent with this Decision and Order.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

                                                                                     *s/Richard J. Arcara*
                                                           HONORABLE RICHARD J. ARCARA
                                                           UNITED STATES DISTRICT COURT

Dated:  August 4, 2023
           Buffalo, New York